Philip M. Black (SBN 308619)
pblack@wolfpopper.com
WOLF POPPER LLP
100 Pine St., Ste. 1250
San Francisco, CA 94111
Tel: 415-745-3232

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES DECKMAN and AMBER NEWBY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PRIMAL NUTRITION, LLC,<br><br>Defendant. | Case No. 2:26-cv-09916<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff James Deckman and Plaintiff Amber Newby ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, bring this Complaint against Defendant Primal Nutrition, LLC ("Primal Nutrition" or "Defendant"), and based upon personal knowledge with respect to themselves, and on information and belief and the investigation of counsel as to all other matters, in support thereof allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and a class (or classes) of all other similarly situated persons, as defined below.

2. This action concerns Defendant's deceptive and unfair tactic of marketing and selling Primal Kitchen branded condiments, sauces, and dressing products that are purportedly made with avocado oil instead of other oils, but do not contain 100% pure avocado oil. Specifically, its Oil & Vinegar Dressing & Marinade Made with Avocado Oil ("Oil & Vinegar Dressing"), Italian Dressing & Vinaigrette & Marinade Made with Avocado Oil ("Italian Dressing"), and Mayo Real Mayonnaise Made with Avocado Oil ("Mayo") (together with other Primal Kitchen food products claiming to contain exclusively avocado oil, the "Products") list on the front label that they are "made with avocado oil" and their ingredient lists name avocado oil as the first ingredient and only oil ingredient. However, a recent study published by researchers at UC Davis (the "UC Davis 2026 Study") found that Primal Kitchen's Oil & Vinegar Dressing, Italian Dressing, and Mayo contain oils that are not consistent with 100% pure avocado oil.

3. Customers like Plaintiffs purchased the Products because of the representations that they contained exclusively avocado oil. Products such as Oil & Vinegar Dressing, Italian Dressing, and Mayo have higher prices because they are supposed to contain exclusively avocado oil. Consumers prefer avocado oil as opposed to seed oils and for its neutral flavor profile and potential health benefits. Plaintiffs and the other members of the Class (as defined below) would not have

purchased Defendant's Products at the price premiums they did had they known the Products contained other oils besides avocado oil, and have been damaged by overpaying for the price premiums of the Products.

4. Defendant's conduct as alleged herein violates the unlawful, unfair, and fraudulent prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; the California Consumer Legal Remedies Act, California Civil Code § 1770(a)(5), § 1770(a)(9), and § 1770(a)(16); the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1); the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, et seq.; and Defendant breached its contract for the sale of goods to Plaintiffs and class members.

## PARTIES

5. Plaintiff James Deckman is a natural person who is a citizen of the United States and who is domiciled in the State of Florida.

6. Plaintiff Amber Newby is a natural person who is a citizen of the United States and who is domiciled in the State of Utah.

7. Defendant Primal Nutrition, LLC is a Delaware limited liability company headquartered in Oxnard, California. Defendant's mailing address is 1101 Maulhardt Ave, Oxnard, CA 93030. Defendant is a wholly owned subsidiary of The Kraft Heinz Company ("Kraft Heinz") and has been since approximately January 4, 2019.[1] Defendant may be served via its registered agent, CT Corporation System, at 330 N. Brand Blvd, Suite #700 Glendale, CA 91203.

8. Defendant, through its Primal Kitchen brand, markets and sells products that claim to be made exclusively with avocado oil to consumers throughout the United States. A substantial portion of the conduct giving rise to Plaintiffs' claims, including the design, marketing, and/or sale of the Products, took

[1] *See* https://news.kraftheinzcompany.com/press-releases-details/2019/Kraft-Heinz-Completes-Acquisition-of-Primal-Kitchen.

place in, and emanated from, California. Defendant lists Oxnard, California 93030 as its address on all its Products.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one member of the class(es) is a citizen of a state different from Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is headquartered in this District.

12. Defendant has sold the Products in California and nationwide.

## FACTUAL ALLEGATIONS

***Defendant's Products***

13. Defendant's Primal Kitchen-branded food products claim to be made with "Ingredients You Can Trust," including "Good Fats from Plant-Based Oils." https://www.primalkitchen.com/pages/our-mission, archived at https://perma.cc/YJX8-PMQU. These include pourable avocado oil, avocado oil cooking spray, avocado oil dressings, and avocado oil mayonnaises. Its website asserts: "Many of our fan-favorite condiments, dressings, and sauces are made with avocado oil, a source of good fats from delicious avocados." *Id*.

14. Defendant further claims that its "full suite of products are consciously crafted and made without dairy, gluten, grains, artificial sweeteners, canola oil, and soy." https://www.primalkitchen.com/pages/our-nutritional-philosophy, archived at https://perma.cc/LYR7-SQ97. Defendant also discouraged people from consuming "seed oils." *See, e.g.*, https://www.instagram.com/reel/DF3rLdgyBfP, archived at https://perma.cc/3LAT-TB4A (Defendant's founder Mark Sisson extolling the

movement away from seed oils); https://www.instagram.com/reel/DEYKRGCSVZQ, archived at https://perma.cc/3AAR-S7FH (Sisson promoting Primal Kitchen product and remarking that he's "trying to avoid seed oils"). Defendant claims its Products are "Sourced with Care," and represents that its Products contain "Pure Avocado Oil":




https://www.primalkitchen.com/pages/our-impact, archived at https://perma.cc/P7FX-U9VT.

15. During Defendant's parent company Kraft Heinz's earnings call for the second quarter of 2025, held on July 30, 2025, former Kraft Heinz CEO Carlos Abrams-Rivera emphasized consumers' growing taste for "better-for-you" products, stating, "[e]ven in today's environment where conversations center around value, we are also seeing consumers prioritize better-for-you options. We have an array of great-tasting, affordable products that consumers who are looking for healthier, more sustainable choices can enjoy. [A] leading example[] of this – … our Primal Kitchen portfolio."

16. Defendant's website has an "Avocado Oil FAQ" page with questions, including "How can consumers know if avocado oil is pure?," to which Defendant answered, "Purity is about ensuring the product contains what the label says. At Primal Kitchen, every lot of avocado oil we use is backed by a supplier certificate of analysis confirming purity, and we require independent third-party laboratory testing to verify those certificates." https://www.primalkitchen.com/blogs/articles/

avocado-oil-faq, archived https://perma.cc/4UBL-7NBN. The FAQ also includes the question, "What should consumers look for when choosing an avocado oil?," to which Defendant answered, "Look for a reputable brand with transparent sourcing and strong quality standards. … Ultimately, consumers should feel confident that the company stands behind the authenticity and quality of its oil." *Id.* The FAQ further includes the question, "Is avocado oil sometimes mixed with other oils?," to which Defendant answered, "Adulteration—the addition of less expensive oils to avocado oil—is an important quality concern in the category. That's why we take robust supplier standards, testing, and ongoing quality monitoring so seriously." *Id.* The FAQ also includes the question, "How do you test avocado oil for quality?," to which Defendant answered, "Tests measure characteristics including chemical composition, oxidation, freshness, and other markers that help verify the oil meets established specifications. Every lot of avocado oil used by Primal Kitchen is backed by a supplier certificate of analysis confirming purity, as well as independent third-party laboratory testing to verify those certificates." *Id.*

17. Refined avocado oil also has a reputation for a neutral flavor profile. Consumers of avocado oil do not want avocado oil that is blended with other oils.

18. Defendant confirms this by stating on its website that "[u]nlike stronger oils such as olive or coconut, avocado oil has a mild and buttery taste that won't overpower your meals. This allows the natural flavor of your main ingredients to shine through[.]" https://www.primalkitchen.com/blogs/articles/benefits-avocado-oil, archived at https://perma.cc/8WCF-WEAE. Defendant further states, "[o]ur products are intentionally crafted with premium ingredients like pure avocado oil … to make all your meals and snacks more delicious … With its neutral flavor and good fats, we think there's nothing that avocado oil can't do!" https://www.primalkitchen.com/blogs/articles/seed-oils, archived https://perma.cc/Y3NH-N5A6.

19. Defendant, through its Primal Kitchen brand, markets and sells dressing and marinade products in different flavors that claim to be made with avocado oil ("Dressing Products")[2], including Oil & Vinegar Dressing and Italian Dressing. https://www.primalkitchen.com/collections/salad-dressings, archived at https://perma.cc/M2BS-ALCM.

20. The front and back label of the 8 oz. package of the Oil & Vinegar Dressing looks like this:







[2] The range of products produced by Defendant include the Ranch Dressing & Marinade Made with Avocado Oil, Original Buffalo Sauce Made with Avocado Oil, Caesar Dressing & Marinade Made with Avocado Oil, Balsamic Dressing & Marinade Made with Avocado Oil, Green Goddess Dressing & Marinade Made with Avocado Oil, Honey Mustard Dressing & Marinade Made with Avocado Oil, Sesame Ginger Dressing & Marinade Made with Avocado Oil, Cilantro Lime Dressing & Marinade Made with Avocado Oil, Greek Dressing & Marinade Made with Avocado Oil, Dreamy Italian Dressing & Marinade Made with Avocado Oil, Plant Based Ranch Dressing & Marinade Made with Avocado Oil, Buffalo Ranch Dressing & Marinade Made with Avocado Oil, Poppyseed Dressing & Marinade Made with Avocado Oil, Tzatziki Style Made with Avocado Oil, Grass-Fed Dairy Buttermilk Ranch Made with Avocado Oil, and Grass-Fed Dairy Creamy Romano Made with Avocado Oil.

21. The Oil & Vinegar Dressing label clearly informs a consumer that it contains avocado oil. The text "MADE WITH AVOCADO OIL" and a photo of an avocado are on the primary display panel. The text "MADE WITH AVOCADO OIL" and a pattern sketch of avocados also appear on the packaging seal. The first and primary ingredient in the ingredient list is avocado oil. It does not list any other oils. It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients. The side panel of the package also says, "NO SOY or CANOLA."

22. Defendant's website has similar statements that communicate to consumers that the Oil & Vinegar Dressing is made with avocado oil and only avocado oil. For example, the description of the Oil & Vinegar Dressing on the Dressings and Sauces listing page claims that the product contains "No seed oils, soy, or canola":




https://www.primalkitchen.com/collections/dressings-and-sauces?page=2, archived at https://perma.cc/RY7H-DD35; *see also*

https://www.primalkitchen.com/products/avocado-oil-and-vinegar-vinaigrette-marinade, archived at https://perma.cc/Q6J6-KYFD.

23. Defendant makes similar statements about the Italian Dressing. The front and back label of the 8 oz. package looks like this:







24. The Italian Dressing label and website also make it clear that it is supposed to contain avocado oil and not other oils. *See, e.g.*, https://www.primalkitchen.com/products/italian-vinaigrette-marinade, archived at https://perma.cc/HJ45-E4UA.

25. The first and primary ingredient in the ingredient list for Italian Dressing is avocado oil. It does not list any other oils. It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients.

26. In addition to Dressing Products, Defendant sells other prepared foods such as mayonnaise[3] and sauces[4] that claim to contain pure avocado oil.

27. For example, Defendant sells Mayo that claims to be made with pure avocado oil. The front and back label of the 12 oz. package[5] looks like this:




28. The Mayo label has similar representations that it contains avocado oil. The front label says that it is "MADE WITH AVOCADO OIL," and has a photo of

---

[3] Defendant's range of products includes Chipotle Lime Real Mayonnaise Made with Avocado Oil, Garlic Aioli Real Mayonnaise Made with Avocado Oil, and Squeeze Chipotle Lime Real Mayonnaise Made with Avocado Oil.

[4] Defendant's range of products include Chicken Dippin' Made with Avocado Oil, Special Sauce Made with Avocado Oil, Yum Yum Sauce Made with Avocado Oil, Tartar Sauce Made with Avocado Oil, No Dairy Vodka Sauce Made with Avocado Oil, Hot Buffalo Sauce Made with Avocado Oil, Avocado Lime Made with Avocado Oil, Mild & Sweet Buffalo Sauce Made with Avocado Oil, Creamy Sriracha Made with Avocado Oil, Creamy Cashew Alfredo Made with Avocado Oil, Polynesian Sauce Made with Avocado Oil, Roasted Garlic Made with Avocado Oil, Cashew Kale Pesto Alfredo Made with Avocado Oil.

[5] Defendant's Mayo product also comes in 24 oz. and a squeeze bottle version. *See* https://www.primalkitchen.com/products/avocado-oil-mayo?variant=31855583395955, archived at https://perma.cc/Z42E-6SZN; https://www.primalkitchen.com/products/squeeze-mayo-with-avocado-oil, archived at https://perma.cc/VS28-FY47.

an avocado. The first and primary ingredient in the ingredient list for Mayo is avocado oil. It does not list any other oils. It does not have a warning that other oils might be present, such as the phrases "may contain," "produced in a manufacturing facility" that has an allergen present, or that it has "one of the following" trace ingredients.

29. The website for the Mayo has additional comments about avocado oil and the lack of other oils. It says that it is "Good Fats From Avocado Oil – Avocado oil is a delicious source of monounsaturated fats, aka good fats we love. We make our mayo with avocado oil, NOT soy or canola oil, because you deserve only the best." https://www.primalkitchen.com/products/avocado-oil-mayo, archived at https://perma.cc/28VM-EUWL. There are also FAQs, including the question "What makes Primal Kitchen Mayo different from regular mayo?," to which Defendant answers "Our mayo is made with avocado oil instead of the canola or soybean oils used in traditional mayo. We chose avocado oil for its good fats and neutral flavor." The webpage page also has an image that compares Primal Kitchen's Mayo with conventional mayonnaise with soy or canola instead of avocado oil:




30. Defendant also made similar representations about Mayo on its Instagram (@primalkitchenfoods) with over 800,000 followers: "[T]his Mayo is #1 brand in natural for a reason. So, it's got the creamy texture and flavor that we all know and love about Mayonnaise. … And then it's also got no soy or canola oil. … So, you can actually read the ingredients label and understand it." https://www.instagram.com/reel/DEgIJZsSOrg, archived at https://perma.cc/WJ8C-KGGB.

***Testing Results***

31. In 2026,[6] researchers at UC Davis tested food products that were labeled as containing avocado oil and olive oil (the above-defined UC Davis 2026 Study). The researchers concluded that 89% of the products they tested were not consistent with avocado oil and likely had other oils mixed in instead. *See* https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-

---

[6] The article was first available online on July 11, 2026.

made-pure-avocado-oil, archived at https://perma.cc/5HXH-XD5V; Lopez-Alvarez, et al., "Authenticity of avocado and olive oils used as ingredients in commercially processed foods," 6 Applied Food Research 102389 (2026), available at https://www.sciencedirect.com/science/article/pii/S2772502226007274.

32. Specifically, the study concluded that all of the samples of the Primal Kitchen Products—the Oil & Vinegar Dressing, Italian Dressing, and Mayo from Primal Kitchen—were not "compositionally consistent with authentic oil."[7]

33. The UC Davis 2026 Study measured authenticity based on the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) (the "Codex"). It measured both fatty acids and sterol markers. A sample was only considered inconsistent with the requirements in the Codex if more than two measurements exceeded the acceptable amounts of fatty acids and sterol markers by more than 10%. UC Davis 2026 Study at 2.4, p. 3.

34. The UC Davis 2026 Study highlighted three fatty acids that are included in the Codex and exhibited the greatest difference between products classified as consistent and inconsistent with authentic avocado oil: palmitic acid (C16:0), palmitoleic acid (C16:1), and stearic acid (C18:0). All three of the Products from Defendant sampled in the study (at two samples each, for a total of six samples) were outside of the Codex ranges for these fatty acids. *See* UC Davis 2026 Study, Supplemental materials, Table S3: "Fatty acid profiles of all samples." For example, 4.0% to 17.1% of the fatty acids in avocado oil are supposed to be palmitoleic acid (C16.1), but none of the six samples from Primal Kitchen exceeded 3.0%.

---

[7] The UC Davis website provided a "Media Kit" of materials to accompany the story. This Media Kit included a document titled "Studied products AFRES.pdf," which stated "Brand information in **Authenticity of avocado and olive oils used as ingredients in commercially processed foods**" (bold in original). Two samples of each of the Products were tested and given a sample identification number between 41 through 44 and 61 through 62. *See* https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779.

35. The UC Davis 2026 Study also highlighted three sterol markers that are included in the Codex: campesterol, stigmasterol, and Δ7-avenasterol. Elevated levels of these three sterol markers are consistent with avocado oil that has been substituted or diluted with other vegetable oils. All three of the Products from Defendant sampled in the study (consisting of six samples) were outside of the Codex ranges for these sterol markers. *See* UC Davis 2026 Study, Supplemental materials, Table S4: "Sterol profiles of all samples." For example, only 0.3% to 2.0% of the sterols in avocado oil are supposed to be stigmasterol, but the lowest sample from the Primal Kitchen Products was 5.1% and the rest were between 5.5% and 6.0%.

36. The UC Davis 2026 Study also noted that cis-vaccenic acid (C18:1 (n-7)) is often higher in samples that are otherwise consistent with the Codex requirements. Prior research by one of the authors of the UC Davis 2026 Study concluded that measuring C18:1 (n-7) can be useful to determine whether a product labeled as avocado oil has been adulterated with seed oils such as safflower or sunflower oil. *See* Green, Wang, "Cis-vaccenic acid: New maker [sic] to detect seed oil adulteration in avocado oil," 1 Food Chemistry Advances 100107 (2022), available at https://www.sciencedirect.com/science/article/pii/S2772753X22000958?via%3Dihub. For example, less than 0.75% of the fatty acids in safflower oil and less than 1.3% of the fatty acids in sunflower oil are C18:1 (n-7), while 5.5% to 7.5% of the fatty acids in avocado oil are C18:1 (n-7).

37. The UC Davis 2026 Study found that all three of the Primal Kitchen Products sampled had C18:1 (n-7) values between 1.7% and 2.3%. This is not consistent with avocado oil.

38. Defendant charges a price premium for the Products because they are labeled as containing exclusively avocado oil.

39. The UC Davis 2026 Study concluded that "Retail prices showed consistent premiums for products labeled as containing avocado oil or olive oil relative to vegetable oil counterparts." UC Davis 2026 Study, page 4.

40. Indeed, Defendant's Mayo, for example, was priced and sold at a significantly higher price than Hellman's classic mayonnaise, a vegetable oil counterpart. At one retailer, Defendant's Mayo (12 oz.) currently sells for $7.77 ($0.65 per ounce), while Hellman's classic mayonnaise (15 oz.) sells for $4.22 ($0.28 per ounce). *See* https://www.walmart.com/ip/Primal-Kitchen-Mayo-Real-Mayonnaise-Made-with-Avocado-Oil-12-fl-oz-Jar/129670757, archived at https://perma.cc/XJP5-JVBX; https://www.walmart.com/ip/Hellmann-s-Made-with-Cage-Free-Eggs-Real-Mayonnaise-Condiments-15-Oz/10291726, archived at https://perma.cc/38DP-5V9T. Despite Hellman's classic mayonnaise being sold in a higher volume, which typically reduces cost, Defendant's Mayo is almost twice the price of the non-avocado oil mayonnaise.

41. The label and ingredient lists for the Products must identify the ingredients by their common or usual names. *See* 21 C.F.R. § 101.4(a)(1).

42. The labels and ingredient lists for the Products claim that they exclusively include avocado oil.

43. The Products contain oils that are not consistent with the usual and customary name of avocado oil.

44. The Products do not exclusively contain avocado oil.

45. The Products do not contain pure avocado oil.

46. The Products do not list all of their ingredients in violation of federal requirements. *See* 21 C.F.R. § 101.4(a)(1).

47. Following publication of the UC Davis 2026 Study, Primal Kitchen has continued to maintain the purity of its Products. In response to the study, Primal Kitchen Founder Mark Sisson stated, "Primal Kitchen uses 100% pure avocado oil in our products -- never blended with seed oils. We stand behind that commitment

and the rigorous sourcing and quality standards we've had in place from the beginning. … Primal Kitchen does not use seed oils in any of its products." https://x.com/Mark_Sisson/status/2086962524210229441, archived at https://perma.cc/DDR8-CNR5. Primal Kitchen President Dan Stangler commented, "We maintain rigorous quality standards, including requiring certificates of analysis for every batch and ongoing testing from our suppliers to verify the purity and quality of our avocado oil. Primal Kitchen uses pure avocado oil in our products and does not blend with other seed oils." https://dailycaller.com/2026/08/11/uc-davis-study-avocado-oil-products-fail-testing-cheap-oils-primal-kitchen-chosen-foods-kraft-heinz, archived at https://perma.cc/9WHN-4U4S. Defendant also posted a response on its Instagram account, "We source our avocado oil from trusted suppliers who confirm the oil's integrity through independent, third-party laboratory testing. We are confident in our ingredients but continuously review our supply chain." https://www.instagram.com/p/DcTuZnkudub, archived at https://perma.cc/WYV7-HCZ2.

***Plaintiffs' Experiences***

48. Plaintiff Deckman is a consumer who favors products containing avocado oil to the exclusion of other oils due to its taste profile, among other reasons.

49. Plaintiff Deckman purchased Defendant's Products, including Defendant's Italian Dressing and Mayo, directly from Defendant's website, https://www.primalkitchen.com, several times because of the representation that the Products contained exclusively avocado oil.[8]

[8] Plaintiff Deckman has also purchased Defendant's Original Buffalo Sauce Made with Avocado Oil, Balsamic Dressing & Marinade Made with Avocado Oil, Ranch Dressing & Marinade Made with Avocado Oil, Avocado Lime Made with Avocado Oil, and Chicken Dippin' Made with Avocado Oil, among other Products.

50. Plaintiff Deckman paid a higher price for Defendant's Products relative to other similar products because they were supposed to contain exclusively avocado oil.

51. After Plaintiff Deckman learned following the publication of the UC Davis 2026 Study that Defendant's Products do not contain pure avocado oil, Plaintiff Deckman cannot trust that Defendant's Products or any of the Products would exclusively contain avocado oil. If Plaintiff Deckman could be sure that the Products did actually exclusively contain avocado oil, Plaintiff Deckman would purchase them again.

52. Plaintiff Newby is a consumer who favors products containing avocado oil to the exclusion of other oils due to its taste profile, among other reasons.

53. Plaintiff Newby purchased Defendant's Products, including Defendant's Italian Dressing, Oil & Vinegar Dressing, and Mayo, several times because of the representation that they contained exclusively avocado oil.[9]

54. Plaintiff Newby paid a higher price for Defendant's Products relative to other similar products because they were supposed to contain exclusively avocado oil.

55. After Plaintiff Newby learned following the publication of the UC Davis 2026 Study that Defendant's Products do not contain pure avocado oil, Plaintiff Newby cannot trust that Defendant's Products or any of the Products would exclusively contain avocado oil. If Plaintiff Newby could be sure that the Products did actually exclusively contain avocado oil, Plaintiff Newby would purchase them again.

---

[9] Plaintiff Newby has also purchased Defendant's Buffalo Ranch Dressing & Marinade Made with Avocado Oil, Caesar Dressing & Marinade Made with Avocado Oil, Ranch Dressing & Marinade Made with Avocado Oil, Balsamic Dressing & Marinade Made with Avocado Oil, Honey Mustard Dressing & Marinade Made with Avocado Oil, Sesame Ginger Dressing & Marinade Made with Avocado Oil, Cilantro Lime Dressing & Marinade Made with Avocado Oil, and Greek Dressing & Marinade Made with Avocado Oil, among other Products.

## CLASS ACTION ALLEGATIONS

56. This action is brought by Plaintiffs, individually and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

57. Plaintiffs seek to represent the following nationwide class: all persons in the United States who purchased Defendant's Primal Kitchen Products within the statute of limitations (the "Class").

58. Plaintiff Deckman also seeks to represent the following subclass: all persons in the State of Florida who purchased Defendant's Primal Kitchen Products (the "Florida Subclass").

59. Plaintiff Newby also seeks to represent the following subclass: all persons in the State of Utah who purchased Defendant's Primal Kitchen Products (the "Utah Subclass").

60. Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the Subclasses.

61. Upon completion of discovery with respect to the scope of the Class, Plaintiffs reserve the right to amend the Class definition(s).

62. Excluded from this Class are Defendant and its officers, directors, and employees, as well as Defendant's affiliates, parents, and subsidiaries and their respective officers, directors, and employees.

63. The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. The precise number of Class members and their identities are unknown to Plaintiffs at this time but can be determined through discovery. Based on Defendant's sales volume, there are at least several thousand Class members, and likely significantly more.

64. Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting solely individual members of the

Class. Among the questions of law and fact common to one or more of the Class or Subclass are:

i. Whether Defendant represented that the Products contained avocado oil;

ii. Whether the Products contained 100% avocado oil;

iii. Whether Defendant represented that the Products did not contain oils other than avocado oil, such as seed and other oils;

iv. Whether the Products contained oils other than avocado oil, such as seed oils;

v. Whether Defendant failed to disclose that the Products contained oils other than avocado oil, such as seed and other oils;

vi. Whether Defendant's conduct violates the California Unfair Competition Law;

vii. Whether Defendant's conduct violates the California Consumer Legal Remedies Act;

viii. Whether Defendant's conduct violates the Florida Deceptive and Unfair Trade Practices Act;

ix. Whether Defendant's conduct violates the Utah Consumer Sales Practices Act;

x. Whether Defendant's wrongful conduct caused Plaintiffs and the Class members damages;

xi. The measure and amount of damages suffered by Plaintiffs, and members of the Class;

xii. Whether Defendant's conduct caused it to be unjustly enriched;

xiii. The amount of restitution to which Plaintiffs and members of the Class are entitled;

xiv. Whether Plaintiffs and members of the Class are entitled to punitive damages;

xv. Whether Plaintiffs and members of the Class are entitled to equitable relief, injunctive relief, and/or specific performance;

xvi. Whether Plaintiffs and members of the Class are entitled to a reasonable award of attorney fees, interest, and costs of suit.

65. Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because they were purchasers of the Products.

66. Plaintiffs will fairly and adequately protect the interests of members of the Class and Subclasses and have retained counsel competent and experienced in class actions and consumer litigation. Plaintiffs have no interests antagonistic to or in conflict with those of any Class members.

67. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action. Class members can be notified by publication, and/or by mail or email.

68. Defendant has acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class as a whole.

69. Class certification is also appropriate because there is a readily identifiable class and subclasses on whose behalf this action can be prosecuted. Class members are readily ascertainable. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

## CAUSES OF ACTION

### COUNT I

Violations of the California Unfair Competition Law

Cal. Bus. & Prof. Code §§ 17200, et seq.

*On Behalf of the Class*

70. Plaintiffs hereby incorporate by reference all allegations made in paragraphs 1 through 69.

71. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

72. Plaintiffs assert this cause of action against Defendant for unlawful, unfair and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising, as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the "UCL").

73. Defendant's conduct violates the UCL, as the acts and practices of Defendant constitutes a common and continuing course of conduct by means of "unlawful," "unfair," and "fraudulent" business acts or practices within the meaning of the UCL.

74. Defendant's conduct is fraudulent, and thus amounts to unfair competition as set forth in the UCL, in that Defendant offered Products for sale that claimed to have pure avocado oil as an ingredient, did not disclose other oils as an ingredient, and actually had either a mixture of avocado oil and other oils or solely other oils. Such misrepresentations and omissions are likely to deceive, and in fact have deceived, thousands of consumers.

75. Defendant's conduct is unlawful, and thus amounts to unfair competition as set forth in the UCL, in that it violates, among other things, California Civil Code §§ 1572, 1709 and 1710, California Business & Professions Code § 17500, Florida Stat. § 501.204(1), and Utah Code Ann. §§ 13-11-1, et seq. The

Products' labels also violate the federal requirements for labeling ingredients by their common or usual names. *See* 21 C.F.R. § 101.4.

76. Defendant's conduct is unfair, and thus amounts to unfair competition as set forth in the UCL, because its utility to Defendant, if any, is greatly outweighed by the harm it causes to Plaintiffs and members of the Class; because it violates established public policy as alleged herein; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs and Class members who purchased the Products—which are meant to be eaten—without knowing what was inside.

77. As described above, Defendant willfully deceived Plaintiffs and Class members by misrepresenting the goods it provided and with the intent to induce them to alter their positions to their injury. Defendant's representations were untrue and misleading, and Defendant knew, or by exercising reasonable care should have known, such representations were untrue and misleading. Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. Therefore, the Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

78. As a direct and proximate cause of Defendant's violations of the UCL, Plaintiffs and members of the Class suffered an injury in fact and have suffered monetary harm. Defendant, on the other hand, has been unjustly enriched. The Court should impose a constructive trust and should require Defendant to make restitution to Plaintiffs and the Class and/or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

79. Plaintiffs and the Class seek equitable relief because they have no other adequate remedy at law. Legal remedies available to Plaintiffs and the Class are inadequate because they are not equally prompt and certain and in other ways as efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different from the standard that governs

damages. Hence, the Court may award restitution even if it determines that Plaintiffs and Class members failed to sufficiently adduce evidence to support an award of damages. Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money the defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the statutes herein entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law. Due to these differences in proof and certainty, equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law for damages. Even if legal remedies may be available, Plaintiffs seek equitable remedies in the alternative to legal remedies, which are as of yet uncertain.

80. Defendant's unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiffs and the Class in that the Defendant continues to sell the Products with inaccurate labels. Legal remedies available to Plaintiffs and Class members are inadequate because they do not address likely future harms. Plaintiffs further seek an order enjoining Defendant from engaging in any unlawful or inequitable acts and practices as alleged herein.

81. Plaintiffs and the Class seek equitable relief because they have no other adequate remedy at law.

**COUNT II**

Violations of the California Consumer Legal Remedies Act

Cal. Civ. Code §§ 1750, et seq.

*On Behalf of the Class*

82. Plaintiffs hereby incorporate by reference all allegations made in paragraphs 1 through 69.

83. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

84. The conduct of Defendant alleged above constitutes an unfair method of competition and unfair or deceptive act or practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA").

85. Defendant is a person as defined by Cal. Civ. Code § 1761(c).

86. Plaintiffs and Class members are consumers as defined by Cal. Civ. Code § 1761(d).

87. Defendant's Products, described above, constitute goods as defined by Cal. Civ. Code § 1761(a).

88. Plaintiffs' purchases were transactions under Cal. Civ. Code § 1761(e).

89. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer," which, among other instances enumerated in the CLRA, include: "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have …." (§ 1770(a)(5)); or "Advertising goods or services with intent not to sell them as advertised" (§ 1770(a)(9)); or "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (§ 1770(a)(16)).

90. Defendant violated Cal. Civ. Code § 1770(a)(5) by misrepresenting the characteristics and ingredients of the Products.

91. Defendant violated Cal. Civ. Code § 1770(a)(9) by falsely advertising the Products as having avocado oil, of not having other oils, and failing to disclose the presence of other oils.

92. Defendant violated Cal. Civ. Code § 1770(a)(16) by representing that it would provide Products that contained avocado oil and not seed oils and it did not.

93. The representations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether to purchase Defendant's goods and services. Plaintiffs and Class members justifiably acted or relied upon Defendant's misrepresentations and omissions to their detriment.

94. Plaintiffs and the other members of the Class have been, and continue to be, injured as a direct and proximate result of Defendant's violations of the CLRA.

95. Plaintiffs are entitled to pursue a claim against Defendant on behalf of the Class to enjoin Defendant from continuing its unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

96. Pursuant to Cal. Civ. Code § 1782, Plaintiffs are serving on Defendant a CLRA notice letter. If Defendant fails to rectify these issues within the time period specified therein, Plaintiffs will amend this Complaint, as permitted thereby, to assert claims for additional relief, including damages and punitive damages pursuant to Cal. Civ. Code § 3294.

**COUNT III**

Violations of the Florida Deceptive and Unfair Trade Practices Act,

Fla. Stat. § 501.204(1)

*On Behalf of the Florida Subclass*

97. Plaintiff Deckman hereby incorporates by reference all allegations made in paragraphs 1 through 69.

98. Plaintiff Deckman brings this claim individually and on behalf of the members of the Florida Subclass against Defendant.

99. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

100. As alleged herein, while engaging in trade or commerce within the State of Florida during the time period relevant hereto, Defendant offered Products for sale that claimed to have pure avocado oil as an ingredient, did not disclose other oils as an ingredient, and actually had either a mixture of avocado oil and other oils or solely other oils.

101. The representations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether to purchase Defendant's goods and services. Plaintiff Deckman and Class members justifiably acted or relied upon Defendant's misrepresentations and omissions to their detriment.

102. Plaintiff Deckman and the other members of the Florida Subclass have been, and continue to be, injured as a direct and proximate result of Defendant's violations of the FDUTPA.

103. Plaintiff Deckman and the other members of the Florida Subclass are entitled to damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Fla. Stat. § 501.211 and § 501.2105.

**COUNT IV**

Violations of the Utah Consumer Sales Practices Act,

Utah Code Ann. §§ 13-11-1, et seq.

*On Behalf of the Utah Subclass*

104. Plaintiff Newby hereby incorporates by reference all allegations made in paragraphs 1 through 69.

105. Plaintiff Newby brings this claim individually and on behalf of the members of the Utah Subclass against Defendant.

106. The Utah Consumer Sales Practices Act ("UCSPA") makes unlawful any "deceptive act or practice [by a supplier] in connection with a consumer transaction," which, among other instances enumerated in the UCSPA, include: "indicat[ing] that the subject of a consumer transaction has sponsorship, approval,

performance characteristics, accessories, uses, or benefits, if the subject has not;" (§ 13-11-4(2)(a)); or "indicat[ing] that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if the subject is not;" (§ 13-11-4(2)(b)); or "indicat[ing] that the subject of a consumer transaction has been supplied in accordance with a previous representation, if the subject has not[.]" (§ 13-11-4(2)(e)). The UCSPA further prohibits "[a]n unconscionable act or practice [by a supplier] in connection with a consumer transaction." Utah Code Ann. § 13-11-5(1).

107. Defendant is a "supplier," and Plaintiff Newby and Utah Subclass member's purchases of Defendant's Products were "consumer transactions" entered into primarily for personal, family, or household purposes, within the meaning of Utah Code. Ann § 13-11-3.

108. As alleged herein, while engaging in trade or commerce within the State of Utah during the time period relevant hereto, Defendant offered Products for sale that claimed to have pure avocado oil as an ingredient, did not disclose other oils as an ingredient, and actually had either a mixture of avocado oil and other oils or solely other oils.

109. Defendant committed deceptive acts under Utah Code Ann. § 13-11-4(2)(a) by misrepresenting the characteristics and ingredients of the Products.

110. Defendant committed deceptive acts under Utah Code Ann. § 13-11-4(2)(b) by misrepresenting the characteristics and ingredients of the Products.

111. Defendant committed deceptive acts under Utah Code Ann. § 13-11-4(2)(e) by representing that it would provide Products that contained avocado oil and not seed oils and it did not.

112. The representations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether to purchase Defendant's goods and services. Plaintiff Newby and Class members justifiably acted or relied upon Defendant's misrepresentations and omissions to their detriment.

113. Defendant committed unconscionable acts under Utah Code Ann. § 13-11-5 by taking advantage of Plaintiff Newby and Utah Subclass members' lack of knowledge.

114. Defendant's conduct amounts to a violation under the UCSPA, in that it violates, among other things, Utah Administrative Code R152-11-3(B)(1).

115. Plaintiff Newby and the other members of the Utah Subclass have been, and continue to be, injured as a direct and proximate result of Defendant's violations of the UCSPA.

116. Plaintiff Newby and the other members of the Utah Subclass are entitled to actual damages plus costs and attorneys' fees as permitted by Utah Code Ann. § 13-11-19(5).

**COUNT V**

Breach of Contract

*On Behalf of the Class*

117. Plaintiffs hereby incorporate by reference all allegations made in paragraphs 1 through 69.

118. Plaintiffs bring this claim individually and on behalf of the members of the Class.

119. As alleged above, Defendant promised to sell its Products with pure avocado oil and not other oils.

120. Plaintiffs and the Class members purchased the Products pursuant to that promise.

121. Defendant breached its contract with Plaintiffs and Class members by failing to providing Products with pure avocado oil and instead providing products that contained other oil.

122. Plaintiffs and the other members of the Class were injured and suffered damages as a direct and proximate result of Defendant's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class and Subclass, request that the Court award the following relief:

123. Certify this action as a class action, appoint Plaintiffs as the Class representatives, and designate the undersigned as Class counsel;

124. Declare Defendant's conduct unlawful;

125. Enjoin Defendant from the unlawful conduct alleged herein;

126. Award Plaintiffs and the Classes damages under common law and/or by statute, including treble and/or punitive damages;

127. Award Plaintiffs and the Classes restitution and/or disgorgement;

128. Award Plaintiffs attorneys' fees, costs, and pre-judgment and post-judgment interest; and

129. Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all issues so triable in the present action.

DATED: September 3, 2026

Respectfully submitted,

By: */s/ Philip M. Black*
Philip M. Black

Philip M. Black (SBN 308619)
pblack@wolfpopper.com
WOLF POPPER LLP
100 Pine St., Ste. 1250
San Francisco, CA 94111
Telephone: 415.745.3232

Chet B. Waldman (*pro hac vice* application to be filed)
cwaldman@wolfpopper.com

Matthew Insley-Pruitt (*pro hac vice* application to be filed)
minsley-pruitt@wolfpopper.com
WOLF POPPER LLP
570 Lexington Avenue
New York, NY 10022
Telephone: 212.759.4600

*Counsel for Plaintiffs and the Proposed Classes*